889 F.2d 1258
 58 USLW 2348
 UNITED STATES of America, Plaintiff-Appellee,
v.
The PREMISES AND REAL PROPERTY AT 4492 SOUTH LIVONIA ROAD,
LIVONIA, NEW YORK, That Is, All That Tract or Parcel of Land
Situate in the Town of Livonia, Livingston County, State of
New York, Lined and Being in Land Lot # 39 and Recorded in
Liber 570 at Page 137 of the Livingston County Land Records,
Defendant.
Appeal of Peter SERAFINE, Owner of 4492 South Livonia Road,
Livonia, New York, Claimant-Appellant.
 No. 71, Docket 88-6040.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 30, 1989.
Decided Nov. 17, 1989.
 
 Richard A. Rothman, New York City (Weil, Gotshal & Manges, Perry A. Carbone, Nancy S. Scherer, of counsel), for claimant-appellant.
 Christopher V. Taffe, Rochester, Asst. U.S. Atty. for the W.D.N.Y. (Dennis C. Vacco, U.S. Atty. for the W.D.N.Y., of counsel), for plaintiff-appellee.
 Before FEINBERG and NEWMAN, Circuit Judges, and DUMBAULD, District Judge.*
 FEINBERG, Circuit Judge:
 
 
 1
 This appeal raises substantial questions, some of first impression in this circuit, in connection with the government's use of 21 U.S.C. Sec. 881(a)(7), which provides for civil forfeiture of real property. Foremost among the issues before us is whether the government may seize a person's home without first giving the homeowner an opportunity to be heard. Claimant-appellant Peter Serafine appeals from a final judgment in an in rem action forfeiting his interest as owner of record of the defendant premises. Appellant argues that the United States District Court for the Western District of New York, Michael A. Telesca, J., erred in granting summary judgment in favor of plaintiff-appellee United States and in denying Serafine's earlier motions to dismiss the government's complaint and for return of property. Appellant asks us to reverse the decision of the district court and dismiss the complaint or, alternatively, to remand the matter for trial. For reasons given below, we hold that the government's seizure of appellant's home at the inception of its in rem action was improper; nevertheless, we affirm the subsequent judgment of forfeiture of the district court.
 
 Background
 
 2
 On December 15, 1986, the United States commenced this civil in rem forfeiture proceeding against the premises and real property located at 4492 South Livonia Road in the Town of Livonia, New York. The property named in the complaint consisted of a 120-acre parcel of land with a house, two barns and several small outbuildings. The government's complaint alleged that the defendant property was used to facilitate the distribution of cocaine, a controlled substance, and was therefore subject to forfeiture under 21 U.S.C. Sec. 881(a)(7).
 
 
 3
 On December 16, 1986, the United States filed a notice of lis pendens against the property in the County of Livingston, identifying Serafine as the owner of record. On the same day, a warrant of seizure and monition was issued by a deputy clerk of the district court, in accordance with the procedures outlined in 21 U.S.C. Sec. 881(b).[1] Also on that day, the government appeared ex parte before then Magistrate (and now Judge) David G. Larimer, and obtained an additional seizure warrant/writ of entry based upon probable cause. This latter warrant directed seizure of the property, "including the primary residence and other outbuildings." Pursuant to these warrants, United States marshals seized the defendant premises on December 17, 1986.
 
 
 4
 The affidavit in support of the seizure warrant before Magistrate Larimer was submitted by Benjamin C. Brainard, a Special Agent of the United States Drug Enforcement Administration (DEA). Agent Brainard referred to three events, known as a result of his own personal involvement and as a result of reports made to him by other special agents, as establishing probable cause to believe that the property had been used to facilitate the distribution of cocaine. First, on April 25, 1986, a confidential informant arranged to purchase cocaine from one Richard Meyering, apparently a known drug dealer. The individual was equipped with a transmitter unit, and Meyering was heard to state that he would "run down the road to get the cocaine." DEA agents (not including Brainard) allegedly observed Meyering leave his residence, drive directly to 4492 South Livonia Road, enter the house, and then return to his own residence. Upon his return, Meyering gave the supposed purchaser a glassine bag containing cocaine, which he in turn gave to Brainard. Second, on May 21, 1986, the same person introduced Brainard to Meyering as a prospective purchaser of cocaine. Meyering indicated his need to go to his "guy's house," and other surveilling DEA agents allegedly observed Meyering again drive to and return from 4492 South Livonia Road. Upon his return, Meyering gave Brainard a glassine bag containing cocaine. Third, on June 26, 1986, upon the authority of a search warrant issued by a Livingston County Court judge, Brainard, along with other DEA agents and state officials, conducted a search of the defendant premises and seized the following items: several containers holding cocaine cutting agents and small quantities of cocaine and marijuana; a triple beam balance scale; seven hand guns; a hand grenade; an Uzi 9 mm. carbine; and $19,000 in cash, of which nine $100 bills were confirmed by serial match-up to have been given in the cocaine purchases on April 25 and May 21, 1986.
 
 
 5
 Following the seizure of the premises, the government entered into an occupancy agreement with Serafine, permitting him to continue his residence during the pendency of the civil forfeiture proceeding. In February 1987, Serafine moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and for the return of his property pursuant to Fed.R.Crim.P. 41(e). Serafine claimed, among other things, that 21 U.S.C. Sec. 881(a)(7) was unconstitutional on its face and as applied because the statute did not provide for, and he was not afforded, an adversary hearing prior to the seizure of his home. Affidavits of Serafine and his attorney were submitted in support of the motions. These affidavits did not dispute the factual allegations in the Brainard affidavit except for the claim that it would have been physically impossible for surveillance agents to observe Meyering's entry into Serafine's home, because the property is surrounded by trees and is located one-quarter mile from the main road.
 
 
 6
 In August 1987, Judge Telesca denied Serafine's motions in a written opinion, reported at 667 F.Supp. 79. In determining whether the procedures used satisfied due process, the district court balanced the risk of an erroneous deprivation and the probable value of additional safeguards, the government's interest in immediate seizure and the strength of the property interest at stake. Id. at 81. Although the court acknowledged that Serafine had a significant property interest in the property seized, it held that this was outweighed by the governmental interest in fostering the use of seizure as a weapon to combat drug trafficking. Id. at 84. The court concluded that preseizure notice and an opportunity to be heard were not required prior to the seizure of a home pursuant to 21 U.S.C. Sec. 881(a)(7), although the requirements of due process would not have been satisfied if the seizure had taken place pursuant to a warrant issued solely by a clerk without the benefit of a judicial determination of probable cause. Id. The court concluded, however, that the ex parte probable cause hearing before Magistrate Larimer afforded Serafine all the process that was due. Id.
 
 
 7
 In September 1987, Serafine entered a plea of guilty to a state court indictment charging criminal sale of a controlled substance on May 21, 1986. During his state court plea hearing, Serafine admitted that on that date he provided Meyering with a quantity of cocaine with the knowledge that it would be sold or transferred to others.
 
 
 8
 In November 1987, some two months after Serafine's guilty plea, the government moved for summary judgment in the civil forfeiture action. In support of its motion, the government relied again on the affidavit of Agent Brainard and also on Serafine's admissions during his state court plea proceeding. In response to the government's motion, Serafine contended that summary judgment should be denied because, among other reasons, the allegations contained in the Brainard affidavit were hearsay, Serafine's statements made in the state proceeding were unsworn and factual allegations contained in the Brainard affidavit were in dispute.
 
 
 9
 On December 15, 1987, Judge Telesca granted the government's motion for summary judgment in an unpublished decision. On December 21, 1987, the judge signed an order of forfeiture. This appeal followed.
 
 Discussion
 I. Jurisdiction
 
 10
 At the outset, we consider the government's claim that this court lacks subject matter jurisdiction to hear this appeal. The government contends that since Serafine failed to file a claim and answer in the in rem proceeding below, he has not satisfied the requirements for standing, thus depriving this court of subject matter jurisdiction. We disagree. The government has failed to distinguish between Article III standing, which requires the claimant to demonstrate a sufficient interest in the property to create a "case or controversy" in the constitutional sense, see United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1543 (11th Cir.1987), and statutory standing, which requires the claimant to comply with certain procedural requirements, see United States v. U.S. Currency, in the Amount of $103,387.27, 863 F.2d 555, 560 & n. 10 (7th Cir.1988). Only lack of Article III standing would deprive this court of jurisdiction, and there is no doubt that the owner of the property in issue has such standing. See $38,000.00 in United States Currency, 816 F.2d at 1543-44. When, as here, a claimant has made a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused. See United States v. United States Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir.1985).
 
 
 11
 II. The Constitutionality of 21 U.S.C. Sec. 881(a)(7)
 
 
 12
 Appellant argues that Sec. 881(a)(7) is unconstitutional on its face because it fails to provide the opportunity for a preseizure adversary hearing when a person's home is taken. Subsection (7), which was enacted as a 1984 amendment to the civil forfeiture statute, expanded the list of properties subject to forfeiture to include for the first time
 
 
 13
 [a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of this title punishable by more than one year's imprisonment....
 
 
 14
 21 U.S.C. Sec. 881(a)(7). There are no procedural rules specifically designed to be used in Sec. 881 civil forfeiture actions. Section 881(b), see note 1 supra, apparently allows the government to seize property under three summary procedures, utilizing rules of more general application. Thus, the government may file a complaint pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules), whereupon a court clerk "shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances." Supplemental Rule C(3). Similarly, when the Attorney General has probable cause to believe that the property is subject to civil forfeiture, the government may seize the property following applicable customs laws, pursuant to 21 U.S.C. Sec. 881(d), see note 1 supra, to effect the forfeiture. Finally, the government may request the issuance of a seizure warrant in the manner provided for in the Federal Rules of Criminal Procedure, which require an ex parte probable cause determination by a judicial officer. See Fed.R.Crim.P. 41.
 
 
 15
 In his facial challenge to the constitutionality of Sec. 881(a)(7), appellant maintains that this section, in conjunction with the summary procedures of Secs. 881(b) and (d), violates the Due Process Clause of the Fifth Amendment because it fails to provide for notice and an opportunity to be heard prior to the seizure of an individual's home. We decline appellant's invitation to consider the facial constitutionality of Sec. 881(a)(7). This court has stated that "[t]he doctrine of constitutional avoidance requires courts to consider 'whether a construction of the [challenged] statute is fairly possible by which the [constitutional] question may be avoided.' " United States v. $359,500 in United States Currency, 828 F.2d 930, 934 (2d Cir.1987) (quoting Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)). Section 881(a)(7) by its terms is addressed to the forfeiture of "[a]ll real property." Although this broad language obviously allows the seizure of an individual's home, the application of Sec. 881(a)(7) is not limited to this form of real property. Because appellant also claims that Sec. 881(a)(7) is unconstitutional as applied to the seizure of his home, an issue that we ultimately find dispositive, we need not pass on the constitutionality of Sec. 881(a)(7) under other circumstances. Accordingly, we focus on whether the statute as applied to the forfeiture of real property containing a claimant's home, under all the facts and circumstances of this case, afforded appellant all the process due him. This appears to be an issue of first impression in this circuit.
 
 
 16
 As a general rule, due process has been held to require notice and an opportunity to be heard prior to the deprivation of a property interest, see Fuentes v. Shevin, 407 U.S. 67, 81-82, 92 S.Ct. 1983, 1994-95, 32 L.Ed.2d 556 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969), in the absence of an " 'extraordinary situation[ ]' " that justifies postponing notice and opportunity for hearing. Fuentes, 407 U.S. at 90, 92 S.Ct. at 1999 (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). But see Mitchell v. W.T. Grant Co., 416 U.S. 600, 611-19, 94 S.Ct. 1895, 1902-06, 40 L.Ed.2d 406 (1974). The Supreme Court has found such a truly unusual situation to exist when three criteria have been met:
 
 
 17
 First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.
 
 
 18
 Fuentes, 407 U.S. at 91, 92 S.Ct. at 2000 (emphasis supplied). The requirement that only extraordinary circumstances can justify the failure to provide a preseizure hearing applies even in the context of a civil in rem forfeiture proceeding. In Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court applied the three Fuentes criteria to the seizure of a pleasure yacht pursuant to a Puerto Rican drug forfeiture statute. Id. 407 U.S. at 678-80, 94 S.Ct. at 2089-90. Central to its holding that "this case presents an 'extraordinary situation' in which postponement of notice and hearing until after seizure did not deny due process," id. at 679-80, 94 S.Ct. at 2089-90, was the consideration that the second Fuentes criterion, "a special need for very prompt action," 407 U.S. at 91, 92 S.Ct. at 2000, had been met:
 
 
 19
 [P]reseizure notice and hearing might frustrate the interests served by the statutes, since the property seized--as here, a yacht--will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given.
 
 
 20
 Calero-Toledo, 416 U.S. at 679, 94 S.Ct. at 2090. Calero-Toledo did not hold that seizure for purposes of forfeiture without more was an extraordinary situation justifying the postponement of notice and an opportunity for hearing until after the seizure. But see United States v. A Single Family Residence, 803 F.2d 625, 632 (11th Cir.1986). Rather, the Court expressly limited its holding, stating that "preseizure notice and hearing are not required in the context of this forfeiture," Calero-Toledo, 416 U.S. at 677 n. 12, 94 S.Ct. at 2089 n. 12, that is, a forfeiture presenting an extraordinary situation under the Fuentes criteria, id. 416 U.S. at 679-80, 94 S.Ct. at 2089-90.
 
 
 21
 Section 881(a)(7), as applied to the facts of this case, implicates two basic constitutional principles. First, as discussed above, notice and an opportunity for hearing must generally precede the taking of an individual's property. Second, an individual's expectation of privacy and freedom from governmental intrusion in the home merits special constitutional protection. See, e.g., United States v. Karo, 468 U.S. 705, 714, 104 S.Ct. 3296, 3302-03, 82 L.Ed.2d 530 (1984) ("[P]rivate residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable."); Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house."); G.M. Leasing Corp. v. United States, 429 U.S. 338, 354, 358-59, 97 S.Ct. 619, 629, 631-32, 50 L.Ed.2d 530 (1977) (warrantless seizure of property located on private premises constitutes an impermissible intrusion into privacy); United States v. Reed, 572 F.2d 412, 422 (2d Cir.) ("[O]ne's reasonable expectation of privacy in the home is entitled to a unique sensitivity from federal courts."), cert. denied sub nom. Goldsmith v. United States, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); United States v. Single Family Dwelling, Civ. No. 85-0246-F, slip op. at 38 (D.Mass. Nov. 26, 1986) (Report and Recommendation of Magistrate) ("[I]t is clear that a 'home' is entitled to special due process safeguards when targeted for civil forfeiture.").[2]
 
 
 22
 With these fundamental constitutional principles in mind, we turn to examine Sec. 881(a)(7) as applied to the facts and circumstances of this case. At the outset, we note that the magistrate's ex parte probable cause determination afforded Serafine some process prior to seizure. Although the district court refused to require preseizure notice and opportunity for an adversarial hearing prior to the seizure of Serafine's home on December 17, 1986, the court emphasized that the requirements of due process would not be met "if seizure of real property takes place pursuant to a warrant issued solely by a clerk without the benefit of a probable cause determination by a judicial officer." 667 F.Supp. at 84. See also United States v. Certain Real Estate Property, 612 F.Supp. 1492, 1498 (S.D.Fla.1985).
 
 
 23
 The determination of the constitutional adequacy of the preseizure ex parte procedure afforded Serafine turns on a balancing of three considerations: first, the significance of the property interest at stake; second, the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and third, the government's interest in pre-notice seizure, including the avoidance of burdensome additional procedures. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Taking these considerations in order, an individual's substantial interest in the home, as indicated above, is "entitled to a unique sensitivity from federal courts." Reed, 572 F.2d at 422. Serafine's interest in his home was not in any way diminished by the occupancy agreement entered into with the government, since that agreement allowed continued occupancy as a matter of grace, not entitlement. Next, although an ex parte probable cause determination before a judicial officer reduces the possibility of an erroneous deprivation, preseizure notice and an opportunity to be heard would certainly further minimize that risk. Finally, the government's interest in this context is the narrow one of obtaining pre-notice seizure of a fixed item like a home, not the broad interest of enforcing the drug laws, since the latter will also be served by forfeiture after an adversary proceeding. Moreover, the government's interest in avoiding the burden of that additional procedure cannot be satisfied fully in any event, since a claimant can invoke adversary procedures after seizure, as Serafine did here.
 
 
 24
 With these interests in mind, we turn to the ultimate question of whether the due process balance in this context favors the homeowner or the government. In assessing the strength of the government's interest, we must determine whether this case presented exigent circumstances warranting the postponement of notice and the opportunity for an adversarial hearing.
 
 
 25
 As a general matter, a showing of exigent circumstances seems unlikely when a person's home is at stake, since, unlike some forms of property, a home cannot be readily moved or dissipated. Cf. United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 562 & n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983) (seizure of currency); Calero-Toledo, 416 U.S. at 679, 94 S.Ct. at 2089 (seizure of pleasure yacht). Any exigency that might be posed by the threat of an encumbrance on, or transfer of, the property may be met by less restrictive means than seizure, for example, by the filing of a lis pendens, as was done in this case, along with a restraining order or bond requirement. See Kingsley, 802 F.2d at 580 (Coffin, J., concurring); id. at 582 (Torruella, J., dissenting). Thus, preseizure notice and hearing would not frustrate the statutory purpose of Sec. 881(a)(7). See United States v. $8,850, 461 U.S. at 562 n. 12, 103 S.Ct. at 2011 n. 12.
 
 
 26
 Moreover, despite the government's contentions to the contrary, its own actions belie any claim of exigent circumstances in this case. The government instituted forfeiture proceedings against Serafine's home on December 15, 1986, over six months after obtaining, pursuant to a state court search warrant, drug paraphernalia, drugs, money and weapons from Serafine's premises. Thereafter, any risk that the property would be encumbered or transferred was met by the government's filing of a lis pendens the very next day, which, as the district court indicated, made the property virtually non-transferrable. 667 F.Supp. at 82 n. 1. Also, the government could not reasonably have feared that the property would be "further used as an instrumentality of crime," id. at 84, the ground relied on by the district court, in view of its occupancy agreement with Serafine. That agreement, of course, did not undo the constitutional harm; as indicated above, it allowed continued occupancy as a matter of grace, not entitlement. In sum, under all the circumstances there were no exigent circumstances justifying the seizure of Serafine's home when the forfeiture action was started. We therefore hold that the decision of the district court approving the December 17, 1986 seizure was erroneous.
 
 
 27
 It does not follow, however, that the forfeiture a year later, approved in the judge's December 1987 opinion, was improper. Various circuit courts have held that the illegal seizure of property, standing alone, will not immunize that property from forfeiture, so long as impermissibly obtained evidence is not used in the forfeiture proceeding. See, e.g., United States v. One 1978 Mercedes Benz, Four-Door Sedan, 711 F.2d 1297, 1303 (5th Cir.1983); United States v. One 1975 Pontiac Lemans, 621 F.2d 444, 450-51 (1st Cir.1980); United States v. One (1) 1971 Harley-Davidson Motorcycle, 508 F.2d 351 (9th Cir.1974). The Supreme Court has recognized that this rule applies in forfeiture proceedings. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1040, 104 S.Ct. 3479, 3484, 82 L.Ed.2d 778 (1984). In this case, the unlawfulness of the seizure of Serafine's home on December 17, 1986 would only preclude the government from introducing any evidence gained by its improper seizure of the premises pursuant to the two warrants issued the day before, and there was no such evidence here.
 
 III. The Forfeiture Proceeding
 
 28
 Appellant offers a number of reasons why the forfeiture ordered by the court in December 1987 was improper. First, appellant argues that the district court erred in not dismissing the complaint in the forfeiture proceeding for failure to plead the underlying circumstances with particularity. Rule E(2)(a) of the Supplemental Rules requires that a forfeiture complaint
 
 
 29
 state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.
 
 
 30
 This standard for the particularity of complaints is more stringent than the pleading requirements of the Federal Rules of Civil Procedure. Appellant contends that the government's complaint contains conclusory allegations merely tracking the statutory language of Sec. 881(a)(7) without setting forth the underlying facts, and that dismissal was therefore required. See, e.g., $38,000.00 in United States Currency, 816 F.2d at 1547-48. Appellant further contends that the filing of affidavits along with the complaint cannot cure pleading defects because the rule requires particularity in the complaint itself.
 
 
 31
 Whether the government's complaint satisfies the particularity requirements of Supplemental Rule E(2)(a) is a substantial question. As the First Circuit has noted, "[t]he requirement is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim." United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 638 (1st Cir.1988). Appellant cites a number of cases in which complaints were dismissed for failure to plead sufficient facts. See, e.g., id. at 638-41; $38,000.00 in United States Currency, 816 F.2d at 1547-48; United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1220-22 (10th Cir.1986). However, these cases involved vehicles, currency or proceeds, and it was more difficult for the claimant "to commence an investigation of the facts and to frame a responsive pleading." Vehicles and currency can be put to changing and frequent uses, and it is difficult to trace and distinguish the proceeds of an illegal source from other, legitimately obtained property, see, e.g., $39,000 in Canadian Currency, 801 F.2d at 1220. In contrast, it is unlikely that the claimant to a home alleged to have been used to facilitate drug offenses is without a reasonable starting point from which to begin an investigation. Also, it is possible to distinguish on technical grounds some of the cases relied on by appellant, see, e.g., Pole No. 3172, 852 F.2d at 639 n. 2 (neither specific date nor location of transaction justifying forfeiture identified); $38,000.00 in United States Currency, 816 F.2d at 1541 n. 4 (same).
 
 
 32
 In addition, and of more importance, in determining the sufficiency of a complaint under Rule E(2)(a), courts have examined supporting affidavits to determine whether they cure a lack of particularity in the complaint itself. See Pole No. 3172, 852 F.2d at 639-40; $38,000.00 in United States Currency, 816 F.2d at 1541. Certainly, the Brainard affidavit, which states the dates, circumstances, location and parties to the alleged drug transactions as well as the drugs and drug paraphernalia seized from the premises, cured any defect in the complaint. On balance, it appears that appellant was adequately apprised of the factual circumstances underlying the forfeiture action.
 
 
 33
 Appellant next raises various objections to the district court's grant of summary judgment. First, appellant contends that the court erroneously relied on hearsay statements in the Brainard affidavit. Appellant emphasizes that Fed.R.Civ.P. 56(e) requires that affidavits on a motion for summary judgment be based on personal knowledge and admissible evidence. Appellant concedes, however, that some courts have established an exception to Rule 56(e) in the context of civil forfeiture and permitted the government to satisfy its showing on the basis of hearsay affidavits. Nevertheless, appellant contends that "[n]othing could be more fundamental to due process than the requirement" that the government produce admissible evidence to effect a forfeiture.
 
 
 34
 Whether the requirements of Rule 56(e) must be literally adhered to in the civil forfeiture context is an open question in this circuit. The Ninth Circuit, in response to a similar challenge has stated that "the simple answer is that '[s]ummary judgment procedures under Rule 56, Fed.R.Civ.P., must necessarily be construed in the light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein.' " United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1283 (9th Cir.1983) (quoting United States v. One 1975 Mercedes 280S, 590 F.2d 196, 199 (6th Cir.1978)). In a forfeiture proceeding brought under Sec. 881, the burden is initially upon the government to establish its right to forfeiture by demonstrating probable cause. See 21 U.S.C. Sec. 881(d) (incorporating the procedures for customs forfeitures); 19 U.S.C. Sec. 1615. To establish its case, the government must have reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir.1986).
 
 
 35
 Once the government has made its probable cause showing, Sec. 1615 places upon the claimant "the ultimate burden of proving that the factual predicates for forfeiture have not been met." Banco Cafetero Panama, 797 F.2d at 1160. The claimant must prove either that the property was not used unlawfully, see Tahuna, 702 F.2d at 1287, or that the illegal use was without the claimant's knowledge or consent, see United States v. Parcel of Real Property Known as 6109 Grubb Road, 886 F.2d 618 (3d Cir.1989). Where a claimant introduces no such evidence, summary judgment may be granted for the government solely upon the basis of its showing of probable cause. See Tahuna, 702 F.2d at 1287.
 
 
 36
 Although Tahuna was decided prior to the 1984 amendment to Sec. 881 that added real property as a forfeitable res, federal courts have continued to follow Tahuna in allowing the government to show probable cause on the basis of hearsay, even where real property is at stake. See, e.g., 6109 Grub Road, 886 F.2d 618; United States v. 526 Liscum Drive, Dayton, Montgomery County, 866 F.2d 213, 217 n. 3 (6th Cir.1989). Probable cause, as Tahuna points out, traditionally may be established by hearsay. 702 F.2d at 1283. Since probable cause is all the government need show to establish its prima facie case at the forfeiture proceeding, it should be sufficient to use whatever evidence traditionally establishes probable cause, for the purpose of summary judgment.
 
 
 37
 Appellant argues, however, that there is no justification for comparing a probable cause determination in the criminal context, where arrest and search warrants may be supported by inadmissible hearsay, to the civil forfeiture context. Probable cause determinations in the criminal context are followed by a full panoply of procedural rights at the trial of the ultimate issue of guilt or innocence, including proof of guilt beyond a reasonable doubt. Appellant claims that the absence of these safeguards in the civil forfeiture context requires the government to establish probable cause on the basis of admissible evidence. However, imposing this requirement upon the government's probable cause showing "would clearly undermine Congress's intentional shifting of the burden of proof to the claimant" under 19 U.S.C. Sec. 1615. Tahuna, 702 F.2d at 1283. We decline to do so, in accordance with our decisions in civil forfeiture proceedings applying the statutorily allocated burden of proof, see 19 U.S.C. Sec. 1615, which requires only that the government establish probable cause to shift the burden of persuasion. See Banco Cafetero Panama, 797 F.2d at 1162; United States v. $2,500 in United States Currency, 689 F.2d 10, 12 (2d Cir.1982), cert. denied sub nom. Aponte v. United States, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).
 
 
 38
 Moreover, it is worth noting that a substantial portion of the Brainard affidavit is not hearsay. Agent Brainard was the control agent for the government informant in the first sale, posed as an interested purchaser in the second sale, and participated in the execution of the state search warrant on June 26, 1986. Although Brainard's affidavit concededly contains some hearsay, a substantial portion is not hearsay and reflects his own personal observations and conduct.
 
 
 39
 Appellant next argues that the existence of sharply disputed issues of material fact precluded the entry of summary judgment for the government. Appellant maintains that the observations of the surveilling agents prior to the two alleged offenses on April 25, 1986 and May 21, 1986 provided the only claimed nexus between the alleged sales by Meyering and Serafine's home, and that the agents' ability to observe was disputed through affidavits submitted by Serafine. Appellant points out that the government itself acknowledged, in opposition to his motion to dismiss, that this raised "a substantial factual issue." Thus, there was obviously a genuine dispute over the fact of whether it was physically possible for surveillance officers to observe Meyering enter Serafine's home. The issue remains, however, under Fed.R.Civ.P. 56(c) whether that fact was sufficiently material to defeat the government's showing of probable cause. As will be seen below, we think it was not because the remaining undisputed facts justified the decision of the district court.
 
 
 40
 Preliminarily, we note that there is a controversy between the parties as to whether the district court could, and did, rely on Serafine's statements in the September 1987 state court plea proceeding in establishing probable cause. During this proceeding, Serafine admitted supplying cocaine to Meyering on May 21, 1986, with the knowledge it would be sold or transferred. It appears to us that the district judge did not rely on those statements, although we believe that he properly could have, and we include them in our analysis. As the government points out, Serafine's statements in state court are admissible as admissions by a party-opponent. Even if they were not, we have already held that the district court could consider hearsay. That the statements were unsworn, as appellant emphasized in the district court, does not at all change the result.
 
 
 41
 Appellant also argues that the government cannot rely on statements made in September 1987 to show probable cause existed the preceding December, when it commenced the forfeiture proceeding. The argument has a surface appeal, but on analysis is not persuasive. In order to obtain a forfeiture in this case, the government had to establish probable cause to believe that the defendant premises were used to facilitate the sale of cocaine on or about the dates mentioned in the complaint. The government "need not demonstrate probable cause until the forfeiture trial." Banco Cafetero Panama, 797 F.2d at 1162. Of course, the government cannot start a forfeiture proceeding in bad faith with wild allegations based on the hope that something will turn up to justify its suit. However, that is hardly what happened here; the government had extremely good reason to believe that Meyering had gone to Serafine's home twice to obtain the cocaine later turned over to Brainard. Once a forfeiture proceeding is brought, if further evidence is legally obtained to justify the government's belief, there is no persuasive reason to bar its use. This is not analogous to using the results of a search to validate a warrant that authorized it, which cannot be done. Nor does our holding in Part II of this opinion that the seizure in December 1986 was illegal change the result, so long as the government did not rely on impermissibly obtained evidence, which it has not.
 
 
 42
 With this in mind, and setting aside the disputed observations of the surveillance agents, we turn to examine the undisputed facts that support the district court's conclusion regarding probable cause. The Brainard affidavit, described above, recounts in detail how two "buys" of cocaine were set up on April 25, 1986 and May 21, 1986. Even if no one saw Meyering enter or leave Serafine's property, the affidavit strongly supported the belief that the cocaine came from Meyering's two visits to Serafine's house, and the statements in state court corroborated the latter transaction. The affidavit also recited items lawfully seized on June 26, 1986, pursuant to a state court warrant authorizing a search of the premises. These items included drugs, drug paraphernalia, weapons and $19,000 in cash. Given that such items are tools of the drug trade, see United States v. Fernandez, 829 F.2d 363, 367 (2d Cir.1987) (per curiam), probable cause could be established on the basis of such circumstantial evidence, even when no actual transaction was witnessed, see $2,500 in United States Currency, 689 F.2d at 16. Most significantly, $900 in cash found in Serafine's home was confirmed by serial match-up to have been given to Meyering for the purchase of cocaine on April 25, 1986 and May 21, 1986. Thus, although the parties disagree on the ability of the surveillance agents to observe Meyering enter Serafine's home, this disputed fact is insufficiently material, in view of the other evidence of probable cause, to prevent summary judgment.
 
 
 43
 Nor has Serafine made any showing on an essential element of his defense. Although Sec. 881(a)(7) allows a defense of innocent ownership, this defense was never raised. Moreover, Serafine failed to supply any affidavit or evidence establishing that his property was not used for an illegal purpose. On this record, summary judgment was properly granted for the government solely upon the basis of its probable cause showing. Tahuna, 702 F.2d at 1287.
 
 
 44
 Appellant next argues, citing cases from other circuits, see, e.g., United States v. $321,470.00, United States Currency, 874 F.2d 298, 299 (5th Cir.1989); Premises Known as 526 Liscum Drive, 866 F.2d at 216, that the government has failed to meet its burden of establishing a "substantial connection" between the purported drug sale and Serafine's residence, even if all of the allegations contained in the Brainard affidavit are true. Appellant contends that the sale of a controlled substance, standing alone, has been held insufficient to establish a substantial connection between the real property and the predicate offense on facts analogous to the present case. See United States v. All Those Certain Lots in Virginia Beach, 657 F.Supp. 1062 (E.D.Va.1987).
 
 
 45
 However, Virginia Beach may be easily distinguished. In that case, the government conceded that a single sale was the only connection between the property and the predicate offense; on the day of the transaction the drugs were brought to the claimant's home at the insistence of the government informant; the uncontested affidavit of the claimant indicated that the drugs were present in the home for no more than a few hours; and there was no evidence that the house was used to store drugs. Id. at 1065. On these facts, the court found that there was no "substantial connection" between the claimant's home and the predicate offense. Id. In this case, two sales of drugs were involved and there was probable cause to believe that the source of supply came from within Serafine's home.
 
 
 46
 Moreover, our cases have phrased the test somewhat differently. See United States v. One 1974 Cadillac Eldorado, 575 F.2d 344, 345 (2d Cir.1978) (per curiam) (requiring a "sufficient nexus"); United States v. One 1974 Cadillac Eldorado Sedan, 548 F.2d 421, 423 (2d Cir.1977) (same). Similarly, we have required the government only to show "probable cause to connect the property with narcotics activity," although the government "need not link the property to a particular transaction." Banco Cafetero Panama, 797 F.2d at 1160. See also United States v. One 1986 Mercedes Benz, 846 F.2d 2, 4-5 (2d Cir.1988) (per curiam) (forfeiture may be predicated on a minute quantity of drugs). We believe that under our formulations the requisite showing has been made here.
 
 
 47
 Appellant also argues that the government was entitled to seize only that portion of claimant's real property that was substantially connected to the alleged criminal activity, relying on a line of decisions involving the forfeiture of land containing illegal distilleries. See, e.g., United States v. About 151.682 Acres of Land, 99 F.2d 716 (7th Cir.1938). We are troubled by the failure of Sec. 881(a)(7) to place an express territorial limit on the extent of the real property that is forfeitable. For example, if drugs were sold in a shed on the King Ranch (and, of course, we do not suggest that they are), would its approximately 800,000 acres be lost? The theory of civil forfeiture is that the property devoted to an unlawful purpose is tainted as an instrumentality of crime and therefore must be condemned. While that concept makes sense for a car or a boat, and perhaps for a home and its curtilage, it raises troubling constitutional questions when applied to all of an individual's contiguous property. At some point, it seems that a forfeiture would cross the line of condemning an instrumentality of crime and move into the area of punishing a defendant by depriving him of his estate. If punishment is involved, the Constitution requires many more procedural protections than are available under civil forfeiture.
 
 
 48
 There is authority, however, that Sec. 881(a)(7) by its explicit and broad terms allows for the forfeiture of entire tracts. See United States v. A Parcel of Land with a Building Located Thereon at 40 Moon Hill Road, 884 F.2d 41, 44-45 (1st Cir.1989) (forfeiture of 17.9 acres, including home and other structures); United States v. Santoro, 866 F.2d 1538, 1540, 1543 (4th Cir.1989) (forfeiture of 26-acre parcel, including family residence); United States v. Reynolds, 856 F.2d 675, 677 (4th Cir.1988). The language of the statute makes forfeitable "[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land ... which is used, or intended to be used, in any manner or part " in violation of the statute. 21 U.S.C. Sec. 881(a)(7) (emphasis supplied). The above-mentioned courts have construed the phrase "in any manner or part" to authorize the forfeiture of the whole of the property if any "part" was used for drugs; however, since the quoted words modify the phrase "is used, or intended to be used," it is possible to instead construe the statute as authorizing forfeiture if the property is partially used for drug transactions, but mostly for legitimate purposes. It is also possible to construe "any lot or tract" to refer to real estate of the size usually associated with a lot or a tract of fairly limited acreage, rather than whatever land area is encompassed within the deed by which the owner acquired title. We do not today pass on the proper construction of the statute in view of Serafine's failure to raise in the district court any challenge to the territorial scope of the forfeiture. We believe that the burden was upon him to raise the issue below. Indeed, an owner objecting to the territorial scope of a forfeiture may also have the burden of showing some appropriate demarcation between what property is forfeitable and what is not. Since Serafine did not challenge the scope of the forfeiture in the district court, we will not consider that issue now.
 
 
 49
 Finally, appellant contends that the government should be required to meet the more stringent burden of proof of the criminal forfeiture statute, in view of the punitive nature of this civil in rem forfeiture proceeding. This court has considered and rejected that argument. See $2,500 in United States Currency, 689 F.2d at 15-16 ("[F]unctional similarities between criminal and forfeiture proceedings, especially those predicated on findings of criminal violations, ... do not make all incidents of criminal procedure applicable to forfeiture proceedings, and do not impose the beyond the reasonable doubt standard in forfeiture proceedings.").
 
 
 50
 We are aware that the combined effect of the forfeiture statute and the summary judgment procedure creates an unusual, and perhaps even harsh, result in this case. Nevertheless, this result fits squarely within the statutory framework for civil forfeitures that Congress has expressly provided; we certainly cannot say that Congress did not intend this result in view of the magnitude of the national drug problem it was addressing.
 
 
 51
 In sum: Although we hold that the government's seizure of the premises containing Serafine's home at the inception of the civil forfeiture action was improper, we affirm the district court's later judgment of forfeiture on the motion for summary judgment. We commend assigned counsel for his excellent briefs and argument.
 
 
 52
 Judgment affirmed.
 
 
 
 *
 Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Section 881(b) provides:
 Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when--
 (1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
 (2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;
 (3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
 (4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.
 In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly. The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.
 Subsection (d) of section 881, referred to immediately above, provides:
 The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.
 
 
 [2]
 This report and recommendation was rendered after the First Circuit, in Application of Kingsley, 802 F.2d 571 (1st Cir.1986), remanded the case to the district court, which in turn referred it to a magistrate for report and recommendation. In Kingsley, which likewise involved the seizure of a home, the majority declined to address the constitutionality of 21 U.S.C. Sec. 881(a)(6), an analogous provision of the civil forfeiture statute, which allows for the forfeiture of proceeds traceable to an exchange for a controlled substance. Id. at 578. The magistrate declared the statute unconstitutional on its face, and recommended that the government's complaints be dismissed. Single Family Dwelling, Civ. No. 85-0246-F, slip op. at 48 (D.Mass. Nov. 26, 1986) (Report and Recommendation of Magistrate). Subsequently, the district court dismissed the complaints with prejudice. United States v. Single Family Dwelling, Civ. No. 85-0246-F, slip op. at 2 (D.Mass. Dec. 15, 1986)