**UNITED STATES of America, Plaintiff,**

v.

**The PREMISES AND REAL PROPERTY AT 4492 SOUTH LIVONIA ROAD, LIVONIA, NEW YORK, That is, All That Tract or Parcel of Land Situate in the Town of Livonia, Livingston County, State of New York, Lined and Being in Land Lot # 39 and Recorded in Liber 570 at Page 173 of the Livingston County Land Records, Defendant.**

No. CIV–86–1229T.

United States District Court,
W.D. New York.

Aug. 13, 1987.

Bradley E. Tyler, Asst. U.S. Atty. of Counsel, Rochester, N.Y., for plaintiff.

LaDuca, McGinn & Burbank (John J. LaDuca, of counsel), Rochester, N.Y., for defendant.

## DECISION and ORDER

TELESCA, District Judge.

This is a civil forfeiture proceeding filed by the plaintiff, United States of America, in which it is alleged that the defendant premises was used, or was intended to be used, to distribute, or facilitate the distribution, possession and concealment of cocaine, a Schedule II controlled substance and is thus forfeited to the United States pursuant to the Comprehensive Crime Control Act, 21 U.S.C. § 881(a)(7). The Federal Land Bank of Springfield, which holds a mortgage on the defendant premises, has filed an answer and a claim to real property. Peter G. Serafine, a person identified by the complaint as having an interest or estate in the defendant premises which will be extinguished by the successful conclusion of these forfeiture proceedings, has filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) and a motion for the return of property pursuant to Fed.R.Crim.P. 41(e).

## FACTUAL BACKGROUND

The plaintiff filed its complaint for forfeiture on December 15, 1986. The proceedings are *in rem* and, pursuant to 21 U.S.C. § 881(b), process is governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. On December 16, 1986 plaintiff filed a Notice of Lis Pendens which identified Peter G. Serafine as the person whose estate or interest is intended to be affected.

Also on December 16, 1986 the plaintiff sought, and received, a seizure warrant and writ of entry from the Honorable David G. Larimer, United States Magistrate for the Western District of New York. Magistrate Larimer issued the warrant of seizure based upon the complaint and an affidavit filed by Benjamin C. Brainard, Special Agent of the United States Drug Enforcement Administration ("DEA"). The affidavit states that a DEA surveillance team twice observed a known drug dealer take money from an individual cooperating with the DEA, go to the defendant premises with the money, and return with cocaine. Pursuant to a search warrant issued by a Livingston County Court Judge, DEA agents and Sheriff's Deputies discovered small quantities of a wide variety of controlled substances, a triple beam scale, a variety of pistols and revolvers, and $19,-000.00 in cash on the defendant premises. A portion of the cash included money the DEA had fronted to the cooperating individual.

Magistrate Larimer found that probable cause existed to believe that the defendant premises were used to facilitate exchanges of controlled substances in violation of Title 21, United States Code, and therefore ordered the DEA, other federal officers, or Sheriff's Deputies of Livingston County, New York, to seize the defendant premises and conduct a "reasonable and necessary structural inspection."

In a separate application the plaintiff also received a Warrant of Seizure and Monition issued by Deputy Court Clerk Melissa Baird, pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims ("Admiralty Rules"), Rule C(3) which provides that: "In an action by the United State for forfeiture for federal statutory violations, the Clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances." Pursuant to these warrants, on December 17, 1986, the United States Marshals seized the defendant premises but permitted Peter G. Serafine to remain on the property.

On December 23, 1986, a notice of complaint and arrest of property was served, by mail, upon Peter G. Serafine, his attorney, John J. LaDuca, Esq., and the Federal Credit Bank of Springfield, Agawam, Massachusetts. Pursuant to Admiralty Rule C(4), the notice of claim and arrest of property was also published in a newspaper of general circulation for three successive weeks.

On January 20, 1987, the Federal Land Bank of Springfield filed an answer and a claim to real property, pursuant to Admiralty Rule C(6), in which it alleges that it holds a mortgage on the defendant premis-

es, had no knowledge of any alleged illegal activity conducted on the defendant premises, and that its interest in the property is prior to and superior to any interest asserted by the United States of America in its complaint for forfeiture. The claim to real property alleges that as of December 1, 1986, Peter G. Serafine was indebted to the bank in the amount of $72,560.90. The bank seeks to recover that amount, plus interest and attorneys' fees, if the property is sold pursuant to 21 U.S.C. § 881(e).

Peter G. Serafine moved for the return of property pursuant to Fed.R.Crim.P. 41(e) and for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The motion to dismiss the complaint for forfeiture is made based on the arguments that probable cause did not exist for the issuance of the warrant by Magistrate Larimer and that 21 U.S.C. § 881(a)(7), which provides for forfeiture of real property, is unconstitutional on its face and as applied. For the reasons stated, Peter G. Serafine's motion for return of the property and for dismissal are denied.

## DISCUSSION

With the passage of the Comprehensive Crime Control Act of 1984, the civil forfeiture statute, 21 U.S.C. § 881, was amended to include real property for the first time in the list of types of properties subject to civil forfeiture.

> (7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, …

Claimant Serafine argues that subsection (a)(7), which allows for the seizure of real property, when combined with either subsection (b)(4) or Admiralty Rule C(3), both of which allow for seizure to be made *without* notice and hearing, constitute a violation of his due process rights.

■ In determining whether the procedures followed here satisfy the due process requirements of the Fifth Amendment, this Court must balance the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, the Government's interest in immediate pre-notice seizure, and the strength of Serafine's property interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Because Serafine has a significant property interest in the real property seized by the Government, due process requires that he be afforded the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). I find that the *ex parte* probable cause hearing before Magistrate Larimer satisfied the procedural due process requirements of the Fifth Amendment in this instance.

Traditionally, due process has been held to require notice and opportunity for a hearing prior to the deprivation of a property interest. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969) (Harlan, J. concurring). However, as the Supreme Court noted in *Fuentes*, certain "extraordinary situations" justify postponing notice and opportunity for a hearing. Seizure without opportunity for a prior hearing has been permitted where:

> First … the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Fuentes v. Shevin, supra*, 92 S.Ct. at 2000. Thus, the summary seizure of property has been permitted in situations of exigent circumstances, overriding governmental inter-

est, or both. *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (contaminated food); *Coffin Bros. & Co. v. Bennett,* 277 U.S. 29, 48 S.Ct. 244, 72 L.Ed. 768 (1928) (imminent bank failure); *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (misbranded drugs); *United States v. Pfitsch,* 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084 (1921) (war effort); *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (Internal Revenue collection).

■ Supplemental Admiralty Rule C(3) provides for summary seizure in actions by the United States for forfeitures for federal statutory violations. Upon the Government's filing of a complaint for forfeiture, the Clerk issues a summons and warrant. Neither an *ex parte* probable cause hearing before a judicial officer nor a showing of exigent circumstances are required.

In *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) the Supreme Court upheld the summary seizure of a movable *res,* a yacht. The Puerto Rican statute at issue in that case was modeled after § 881(a). The yacht was summarily seized without prior notice to the owner or lessee, and without even an *ex parte* determination of probable cause by a judicial officer. In holding that the procedure followed satisfied the requirements of due process, the Supreme Court found that the extraordinary situation envisioned in *Fuentes* existed.

First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. Second, pre-seizure notice

and hearing might frustrate the interests served by the statutes, since the property seized—as here, a yacht—will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given. And finally, unlike the situation in *Fuentes,* seizure is not initiated by self-interested private parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes. *Id.,* 94 S.Ct. at 2089–2090 (footnotes omitted).

The propriety of seizure of property which is easily dissipated or moved absent a showing of exigent circumstances or a probable cause determination by a judicial officer has recently been reaffirmed by the Supreme Court and the Second Circuit. *United States v. Eight Thousand Eight Hundred Fifty Dollars in U.S. Currency,* 461 U.S. 555, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983). (due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture); *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1162 (2d Cir.1986) (Under 21 U.S.C. § 881(b) the Government may seize property upon the filing of a complaint and need not demonstrate probable cause until the forfeiture trial).

Claimant Serafine argues that with respect to the seizure and forfeiture of real property the procedures outlined in § 881(a) and Supplemental Admiralty Rule C(3) violate due process. He maintains that the extraordinary situation described by the court in *Fuentes* and found by the court to exist in *Calero-Toledo* does not exist with respect to real property. The primary distinction is that real property, unlike a yacht or money, cannot be moved or easily dissipated. Moreover, as the Government has filed a *lis pendens,* the property is virtually non-transferrable.[1]

---

1. The Government argues that the *lis pendens* does not adequately protect its interests as Serafine might attempt to transfer the property via quit claim deed. However, this would not defeat any interest the Government might assert since forfeiture occurs at the time the violation of the statute occurred. *Western Pacific Fisheries, Inc. v. S.S. President Grant,* 730 F.2d 1280 (9th Cir.1984); *United States v. One 1978 Mercedes Benz, 4–Door Sedan,* 711 F.2d 1297 (5th Cir.1983).

Serafine relies upon the concurring and dissenting opinions in *Application of Kingsley,* 802 F.2d 571 (1st Cir.1986) for his argument that notice and an opportunity for an adversarial hearing prior to seizure is mandated by the Due Process Clause of the Fifth Amendment. In concurrence, Judge Coffin noted "prior to initiating the pre-indictment seizure of a home pursuant to 21 U.S.C. § 881, the Government must be required to demonstrate before a Magistrate that pre-seizure notice would likely render the property unavailable for forfeiture *and* that less restrictive means to protect the legitimate governmental interest in the property do not exist." *Id.* at 580 (Coffin, J. concurring). This argument centers on the second prong of the Court's finding of extraordinary circumstances in the *Calero-Toledo* case. That is, the finding that pre-seizure notice and hearing might frustrate the interests served by the statute since the property seized could be removed to another jurisdiction, destroyed, or concealed if advanced warning of confiscation were given. I believe that this is an incorrect reading of *Calero-Toledo,* and find that pre-seizure notice and opportunity for an adversary hearing is not required.

This case is dramatically different from *Calero-Toledo* in that Magistrate Larimer made a pre-seizure determination that there existed probable cause to believe that the premises in question had been used or intended to be used in violation of the Federal Narcotics Laws. Claimant Serafine argues that due process requires in addition an opportunity for a pre-seizure adversarial hearing. I do not believe that the benefits to be gained by such a hearing outweigh the Government's interest in immediate seizure. *Cf. Mathews v. Eldridge, supra.* An *ex parte* probable cause finding by a judicial officer greatly reduces the possibility of an erroneous deprivation. Moreover, claimants may, as Serafine does here, immediately contest the seizure via a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The minimal potential benefit to be gained by claimants through pre-seizure notice and adversary hearing is overshadowed by the Government's compelling interest in preventing that property from being further used as an instrumentality in the trafficking of narcotics.

The "extraordinary situation" factors enunciated in *Fuentes* and *Calero-Toledo* are not entirely apt in this case as a pre-seizure probable cause hearing was held, even though it was *ex parte.* However, I find that those factors are satisfied in this situation as well. The important governmental interest served by seizure and forfeiture is best illustrated by reference to the legislative history of the Comprehensive Crime Control Act of 1984. The Legislature's emphasis on the increased use of forfeiture as a weapon against drug trafficking was stated directly and unambiguously:

> Clearly, if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made.

S. Rep. No. 225, 98th Cong., 2d Sess. 4, *reprinted in* 1984 U.S.C. Cong. & Admin. News, 3182, 3374. Moreover, pre-hearing seizure serves to "enhance the use of forfeiture, and in particular the sanction of criminal forfeiture, as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." *Id.* at 3374.

This important governmental interest cannot be understated. Our society and our government are involved in a war against drugs, a war which presents an extraordinary situation equal to that found to justify the immediate wartime seizures in *Central Union Trust Company v. Garvan,* 254 U.S. 554, 556, 41 S.Ct. 214, 215, 65 L.Ed. 403 (1921) (bonds supposed to belong to the enemy); *Stoehr v. Wallace,* 255 U.S. 239, 245, 41 S.Ct. 293, 296, 65 L.Ed. 604 (1920) (corporate stock supposed to belong to the enemy); and *United States v. Pfitsch,* 256 U.S. 547, 553, 41 S.Ct. 569, 571, 65 L.Ed. 1084 (1921) (wartime seizure for requisition).

Seizure pursuant to 21 U.S.C. § 881(a)(7) also presents a special need for very

prompt action. This subsection provides for seizure of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission" of a serious violation of the federal narcotics laws. Prompt action and immediate seizure is necessary to prevent that property from being further used as an instrumentality of crime. Admittedly, the land and its appurtenances are not going anywhere. The *in rem* jurisdiction of this court cannot be defeated by pre-seizure notice and hearing. However, the Government is entitled to seize that property *immediately* in an effort to stem further violations of the narcotics laws.

The third prong of the test is also clearly met. Here, the seizure was initiated by an agent of the Government. This is not a case in which a state enforced mechanism for a property deprivation was used solely for private gain as in *Sniadach* and *Fuentes.* Moreover, and most importantly, a judicial officer evaluated the situation and found probable cause for forfeiture prior to the seizure.

██ I therefore find, as have other courts, that pre-seizure notice and opportunty for an adversarial hearing is not required prior to the seizure of real property pursuant to 21 U.S.C. § 881(a)(7). *See United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 632 (11th Cir.1986) (§ 881(a)(6) and (b)); *United States v. A Parcel of Real Property Commonly Known As: 3400–3410 West 16th Street*, 636 F.Supp. 142, 145–146 (N.D.Ill. 1986) (§ 881(a)(7) and (b)); *cf. United States v. Castellano*, 610 F.Supp. 1359, 1439 (D.C.N.Y.1985) (upholding pre-hearing seizure of alleged house of prostitution pursuant to N.J.S.A. § 2C:64–1(b)).

In reaching this conclusion, it is important to note that I do not believe the requirements of due process are satisfied if seizure of real property takes place pursuant to a warrant issued solely by a clerk without the benefit of a probable cause determination by a judicial officer. "The

Constitution requires, at a minimum, *at least* an *ex parte* pre-seizure hearing to ensure that the Government force employed is neither unreasonable nor unconstitutional." *United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway*, 612 F.Supp. 1492, 1497 (S.D.Fla.1985); *see also, United States v. Life Insurance Co. of Virginia Single Premium Whole Life Policy*, 647 F.Supp. 732, 741 (W.D.N.C.1986) (the warrants clause of the Fourth Amendment requires judicial determination of probable cause prior to issuance of warrant of seizure); *but see, United States v. A Single Family Residence in Real Property Located at 900 Rio Vista Blvd., supra*, at 632; *United States v. One 1978 Mercedes Benz, 4–Door Sedan*, 711 F.2d 1297, 1302 (5th Cir.1983) (§ 881(b)(4)). Absent such a determination, the risk of erroneous deprivation is far greater.

I have also reviewed the affidavit of Benjamin C. Brainard, submitted in support of the Government's request for a seizure warrant, and affirm Magistrate Larimer's finding that there was probable cause to believe that the premises in question were used to conceal, facilitate and enable the exchange of controlled substances in violation of Title 21, United States Code.

CONCLUSION

Based upon the overriding governmental interest in fostering the use of seizure and forfeiture as a weapon to combat drug trafficking, as clearly announced by Congress and the Crime Control Act of 1984, I conclude that the claimant Peter G. Serafine's constitutional due process rights were not violated when his property was seized without a pre-seizure adversary hearing. Once the Magistrate found that there was probable cause to believe that the property was used to conceal, facilitate and enable the exchange of a controlled substance in violation of the Federal Narcotics laws, no adversary pre-seizure hearing was necessary and no further pre-seizure process was due to the owner of that property.

The interest of any other party claiming an interest in the property would in no way be affected or enhanced with a pre-seizure hearing. Those rights can adequately be protected at subsequent forfeiture hearings prior to the sale of the property.[2]

Thus, the seizure of real property and premises known as 4492 South Livonia Road, Livonia, New York, is adjudged not to have violated the Fifth Amendment Due Process rights of the claimant, Peter G. Serafine. Accordingly, the seizure warrant issued by the Honorable David G. Larimer, United States Magistrate, on December 16, 1986 is valid. The motion to dismiss the complaint is denied together with the claimant's motion for return of the property pursuant to Fed.R.Crim.P. 41(e).

ALL OF THE ABOVE IS SO ORDERED.

2. With regard to property other than real property the individual whose interests in the property may be extinguished by the forfeiture proceedings cannot assert a defense of innocence to any criminal activity. In other words, the acquittal or failure to indict the property owner does not preclude the Government from proceeding with civil forfeiture action against the property itself. Consistent with the view that the property itself and not the property owner is the defendant, this section does not provide a procedure for excluding from forfeiture the interests of innocent third parties in property other than real property. The Supreme Court has held that the forfeiture statute might not apply to an innocent owner in either of two possible situations: (1) where the property involved had been taken from the owner without his privity or consent, or (2) where the owner could prove not only that he was uninvolved and unaware of the wrongful activity but that he had done all that could be reasonably expected to prevent the wrongful activity from occurring. *Calero-Tole-*

*do, supra; see also, United States of America v. One 1976 Porsche 911S,* 670 F.2d 810, 812 (9th Cir.1979).

With respect to "innocent" claimants, Subsection (a)(7) provides an exception to the forfeiture of real property if the owner establishes that the violation of the statute occurred "without the knowledge or consent of the owner." On its face it appears that this exception is intended to cover an owner whose tenant or lessee violates the statute. It does not appear to cover third-party interests such as those held by a lienor or mortgagee.

Congress did, however, provide a remedy to mitigate the harshness of this statute by allowing someone claiming an innocent interest in property to file a claim with the Attorney General for remission pursuant to Custom and Tariff Laws, 19 U.S.C. § 1618. Such a claim for remission is within the discretion of the Attorney General and is not for the District Court to decide.