**UNITED STATES of America, Plaintiff,**

**v.**

**The PREMISES, REAL PROPERTY AND ACREAGE WITH BUILDINGS, APPURTENANCES AND IMPROVEMENTS LOCATED AT R.D. NO. 1, BOX 152, SCOTCH HILL ROAD, COUNTY OF DELAWARE, BLOOMVILLE, NEW YORK, etc., Defendant.**

No. 92–CV–1656.

United States District Court,
N.D. New York.

Aug. 30, 1993.

Gary L. Sharpe, U.S. Atty., Syracuse, NY (Charles E. Roberts, Asst. U.S. Atty., of counsel), for plaintiff.

Levene, Gouldin Law Firm, Binghamton, NY (John L. Perticone, of counsel), for claimant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

**Introduction:**

On December 22, 1992 plaintiff United States of America ("the Government") filed an application for the issuance of a Warrant of Arrest In Rem/Writ of Entry ("warrant of arrest in rem") for the defendant property pursuant to the Supplemental Rules of Admiralty and Maritime Claims, Rule C(3). Unlike many such applications heard by this court, in this matter the claimant, one Travers John Hanast ("Claimant") has appeared and contested the Government's application.

On February 26, 1993 the court heard oral argument on the Government's application for the warrant of arrest in rem. The court reserved decision, and, in an order dated March 2, 1993, ordered further briefing. Now, having considered the arguments advanced, this Memorandum–Decision & Order constitutes the decision of the court on the Government's application.

**Instant Application:**

Claimant is the owner of the defendant real property located at 152 Scotch Hill Road, in Delaware County, New York. In the amended verified complaint for forfeiture, the Government alleges, upon information and belief, that there is probable cause to believe that during the months leading up to January 14, 1992, the defendant property was used or intended to be used to facilitate the commission of various federal offenses; specifically, the manufacture and distribution of a controlled substance, possession with intent to distribute a controlled substance, and/or conspiracy to commit such offenses. (*Amended Verified Complaint* at ¶ 6). As more fully alleged in the complaint, there are three bases for this assertion of probable cause: the statement of a confidential informant; evidence seized during the execution of a search warrant on January 14, 1992; and, the expert opinion of a New York State Police investigator. The instant application

for a warrant of arrest in rem is based upon the allegations in the complaint and its supporting documentation, and the Government's supporting memorandum of law. Claimant asserts that the evidence seized during the January 14, 1992 search was unconstitutionally obtained and therefore should not be considered by the court in ruling on the Government's application. The Government asserts that this is not the proper stage of the proceedings for such a challenge to the underlying search.

**Complaint:**

The amended verified complaint alleges the following facts. In January of 1992 the New York State Police ("State Police") received information from one Zacharias William Fuller ("Fuller") that Claimant was actively involved in the manufacturing and sale of marihuana from the defendant property. (Affidavit of New York State Police Investigator Robert Fernandez, ¶ 3, attached as Exhibit 3 to the *Amended Verified Complaint* ). Fuller was arrested and subsequently "developed" as an informant by New York State Trooper Richard Lopez (Fernandez Affidavit at ¶ 4). Fuller related to both Trooper Lopez and Investigator Fernandez that he had been to the defendant property with Claimant in January of 1992, and that he had observed a large number of marihuana plants in the basement, a watering system, and grow lights. (Fuller Affidavit, attached as Exhibit 4 to the *Amended Verified Complaint* ). Investigator Fernandez then "verified" Fuller's report by "finding that the electronic [sic] usage [at the defendant property] was exorbitant...." (Fernandez Affidavit at ¶ 4). Based upon Fuller's affidavit and his own investigation into the electrical usage at the defendant property, Investigator Fernandez prepared an application for a search warrant of the defendant property.

On January 14, 1992, Investigator Fernandez appeared before New York State Supreme Court Justice Carl J. Mugglin seeking a search warrant for the defendant premises.

Justice Mugglin granted the request for a search warrant and directed the seizure of marihuana and related paraphernalia. (*Id.* at ¶ 5). On that same day, along with other members of the State Police, Investigator Fernandez executed the search warrant at the defendant premises. Investigator Fernandez recounts in his affidavit that he observed a hydroponic growing operation in the basement of the premises, and seized various drug related paraphernalia.[1] (*Id.* at ¶ 6). Based upon the fruits of the search, Claimant was charged with criminal possession of marihuana in the fourth degree, criminal possession of marihuana in the fifth degree, criminal possession of a weapon in the fourth degree, and unlawful growing of cannabis. (*Id.* at ¶ 12). He was arrested on February 4, 1992. (*Id.*). Investigator Fernandez opines, based upon his experience and his observations at the defendant premises, that the operation found in the defendant premises was established for the distribution of marihuana. (*Id.* at ¶ 13).

In his opposition to the instant application claimant argues that the January 14, 1992 search of the defendant premises was in violation of the United States Constitution. In his affidavit in opposition, Claimant asserts that he was hospitalized during the period in which Fuller claims to have been present in the defendant premises, and that he has never met anyone by the name of Zacharias William Fuller. Therefore, he contends that Fuller's statements were false. Additionally, Claimant submits the affidavit of Wayne Marshfield, Assistant General Manager for Delaware County Electrical Co-op. in further support of his objections to the Government's application. Mr. Marshfield explains that he is familiar with the defendant premises, and that in his opinion the electrical usage at the premises was within the ordinary and normal range for 1990 and 1991. Claimant argues, therefore, that the information provided to Justice Mugglin was false; and furthermore that the falsity of the information was known

1. The Fernandez Affidavit lists the following items as having been seized at the defendant premises: a triple beam scale, over 37.75 grams of marihuana, a .22 caliber revolver, ammunition, a shoulder holster for a semi-automatic weapon, an electronic stun gun, a telecommunication encoder/decoder, a pager, three 400 watt moving light systems, one 5 foot carbon dioxide tank and regulator, seven 30 gallon garbage cans, plant nutrients, electrical timers, and literature and videos on the growing of marihuana with a hydroponic system. (*Id.* at ¶¶ 6–11).

to Investigator Fernandez or at the very least, the information was provided with reckless disregard for the truth.

**Discussion:**

 The Government seeks forfeiture of the defendant property pursuant to 21 U.S.C. § 881(a)(7). That section provides that real property "used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, or violation of this title punishable by more than one year's imprisonment ..." may be subject to forfeiture. *See* 21 U.S.C. § 881(a)(7). In order to obtain a judgment of forfeiture, the Government must demonstrate probable cause to connect the property with narcotics activity. *See generally United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 476 (2d Cir.1992); *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir.1986). Once the Government has made this probable cause showing, the burden shifts to the claimant to demonstrate that the factual predicates for forfeiture are not present. *See United States v. Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 101 (2d Cir.1990). However, before the court reaches the ultimate issue of **forfeiture,** it must first consider whether the Government may **arrest** the defendant property.[2]

As the Second Circuit observed in *United States v. Property at 4492 South Livonia Road,* 889 F.2d 1258, 1262 (2d Cir.1989), *reh. den.,* 897 F.2d 659 (2d Cir.1990) (*Livonia Road* ), § 881 does not provide procedural rules specifically designed for the seizure or arrest of property in civil forfeiture proceedings. However, Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules) provides that

"[i]n actions by the United States for forfeiture for **federal statutory violations,** the clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances." [emphasis added].

It is under this rule that the Government asks the court to issue a warrant of arrest in rem for the defendant property.

 While Rule C(3) provides that the clerk of the court may issue the warrant of arrest in rem, the Second Circuit has held that in a forfeiture action against real property which is the personal residence of the owner, the owner must be given some form of notice and an opportunity to be heard prior to the issuance of a warrant of arrest in rem. *See Livonia Road; accord, United States v. James Daniel Good Property,* 971 F.2d 1376 (9th Cir.1992), *cert. granted,* ——— U.S. ———, 113 S.Ct. 1576, 123 L.Ed.2d 145 (1993). Therefore, in this Circuit the Government cannot obtain a warrant of arrest in rem for real property containing a claimant's home by simply presenting the clerk of the court with a civil forfeiture complaint. Instead, notice of the warrant application must be provided to the claimant and he or she must be accorded an opportunity to be heard prior to the issuance of the warrant.

In *Livonia Road* the Second Circuit reasoned that the application of Section 881(a)(7) to real property which contains the personal residence of the owner "implicates two basic constitutional principles. First, ..., notice and an opportunity for a hearing must generally precede the taking of an individual's property. Second, an individual's expectation of privacy and freedom from governmental intrusion in the home merits special constitutional protection." *Livonia Road,* 889 F.2d at 1264. Considering these constitutional principles, the court held that an ex parte probable cause determination was in-

---

**2.** The Government contends that this is not an application for **seizure** of the defendant property pursuant to 21 U.S.C. § 881(b), but rather an application for its arrest. Pursuant to a warrant of arrest in rem the United States Marshal will inspect the premises and enter into an occupancy agreement with the owner, who will then be **permitted** to live at the defendant property subject to certain conditions. However, as the Second Circuit noted in *Livonia Road, infra,* such an occupancy agreement does not in any way diminish Claimant's property interest in the defendant property, "since that agreement allow[s] continued occupancy as a matter of grace, not entitlement." *Id.* at 1265. Therefore, the Government's distinction between a seizure and an arrest is a distinction without a difference insofar as Claimant's interest in the defendant property is concerned.

sufficient to protect the claimant's due process rights. The court explained that "although an ex parte probable cause determination before a judicial officer reduces the possibility of an erroneous deprivation, pre-seizure notice and an opportunity to be heard would certainly further minimize that risk." *Id.* at 1265.[3] However, the Second Circuit declined the Government's invitation to consider the facial constitutionality of § 881(a)(7), *id.* at 1263; and in denying the Government's application for rehearing, the Second Circuit expressly refused to define the parameters of the predeprivation hearing, *id.*, 897 F.2d at 661.

In light of the Second Circuit's rulings in *Livonia Road*, on June 18, 1991 this Court adopted the Uniform Procedure for Civil Forfeiture Proceedings in the Northern District of New York, ("Uniform Procedure"). In accordance with the Uniform Procedure, the Government must first file with the clerk, *inter alia*, its verified complaint for forfeiture, a notice of lis pendens, a notice as to why a warrant of arrest in rem should not issue ("notice"), and a proposed warrant of arrest in rem. (Uniform Procedure, II. *Real Property Cases*, at A.1.). The clerk then assigns a date for a hearing on the application for a warrant of arrest in rem at least thirty days from the date of the issuance of the notice, and indicates that date on the notice.[4] (*Id.* at A.3.) These items are then served by the U.S. Marshals Service upon the known potential claimants. Next, the Uniform Procedure provides that if, after oral argument on the return date of the application, the court finds that there is "sufficient probable cause" for a warrant of arrest in rem the court will grant the Government's application. (*Id.*). A warrant of arrest in rem certainly deprives a claimant of

his or her property interest, and will undeniably constitute governmental intrusion into his or her home. In order to adequately protect a claimant's interests, the Uniform Procedure was designed to minimize the risk that the warrant of arrest in rem will issue erroneously.

Claimant argues that in order for this predeprivation hearing to be "meaningful", he must be allowed an opportunity to advance his Fourth Amendment challenges. He argues that an evidentiary hearing is necessary to satisfy the dictates of *Livonia Road*. The Government, on the other hand, while recognizing that *Livonia Road* requires that claimant be given an opportunity to be heard, argues that the inquiry at this stage of the proceeding is a limited one, and furthermore that Claimant will have the opportunity at a later stage of the proceedings to challenge the basis for the warrant application. The Government maintains that the issue before the court is "whether there has been a blatant mistake or substantive unfairness; [and, that] if [its] papers one their face show probable cause, then the warrant of arrest should issue." (Government's Reply Memorandum at p. 11).

It is well established that "the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), (quoting, *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). And in *Fuentes* the Supreme Court indicated that "[t]he nature and form of such prior hearings ... are legitimately open to many potential variations...." *Id.* at 96, 92 S.Ct. at 2002. However, the purpose of a pre-deprivation hear-

---

**3.** In *Livonia Road,* the Government initially appeared before then Magistrate (now District Judge) David G. Larimer seeking a seizure warrant for the defendant property. Magistrate Larimer reviewed the complaint and the attached affidavit of Benjamin C. Brainard, Special Agent of the Drug Enforcement Administration, and issued a seizure warrant based upon his finding of probable cause. *United States v. Property at 4492 South Livonia Road,* 667 F.Supp. 79, 80 (W.D.N.Y.1987).

**4.** The Notice as to Why a Warrant of Arrest In Rem Should Not Issue in the instant case provides in pertinent part:

"YOU ARE HEREBY DIRECTED to show cause at the United State Courthouse, at Binghamton, New York, before the Hon. Thomas J. McAvoy, U.S. District Court Judge, on 1–22–93 at 10:00 o'clock in the morning why an Order should not be made and entered directing the United States Marshal of this District to attach the properties until further order of this court, ...."

ing is to reduce the possibility of an erroneous deprivation which may occur in an *ex parte* proceeding before the court. While the court can, on its own, reduce such a risk, the Second Circuit stated in *Livonia Road* that "preseizure notice and an opportunity to be heard would certainly further minimize that risk." *Livonia Road,* 889 F.2d at 1265. Under the Uniform Procedure described above, claimants are given an opportunity to contest the Government's application for a warrant of arrest in rem. However, to define the scope of this predeprivation hearing, the court must focus on the relief being sought, the effect that relief will have on Claimant's interests, and the nature of the Government's burden.

Although he has opposed the issuance of the warrant of arrest in rem, Claimant has not moved for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b) or for summary judgment pursuant to Fed.R.Civ.P. 56(c). Of equal significance is the fact that the Government has not moved for summary judgment pursuant to Fed.R.Civ.P. 56(c), but rather only seeks a provisional remedy—i.e. the arrest of the property. Therefore, the only application before the court at this time is the Government's application for a warrant of arrest in rem. Acceptance of Claimant's argument would draw the court into a decision on the merits of the case. And, while consideration of the merits of the case would certainly minimize the risk of an erroneous deprivation, the case is not properly presented for such a ruling.

Acceptance of the Government's argument, on the other hand, would not adequately protect Claimant's interests, and would deprive Claimant of a "meaningful" opportunity to be heard. In *Livonia Road* the district court looked solely at the allegations in the Government's papers in an *ex parte* proceeding. That procedure, the Second Circuit held, insufficiently minimized the risk of an erroneous deprivation. The purpose of affording the claimant an opportunity to be heard is to further minimize that risk; and if the claimant cannot challenge the allegations in the Government's papers by presenting contradictory proof that purpose will not be accomplished.

The function of the hearing under the Uniform Procedure is not to determine whether the Government can demonstrate, by a preponderance of the evidence, facts which are sufficient to establish probable cause to connect the property with narcotics activity. That is one of the ultimate issues in the case; and one which the court will not decide at this preliminary stage. What the court must decide at this stage of the proceedings is whether the Government has made a sufficient preliminary showing to justify the issuance of a warrant of arrest in rem for the defendant property. This presents the question of what constitutes a "sufficient" preliminary showing.

In a slightly different, but analogous context a movant seeking a enjoin another party from acting must demonstrate, *inter alia,* a likelihood of success on the merits. *See Haitian Centers Council, Inc. v. McNary,* 969 F.2d 1326, 1338 (2d Cir.1992); *Eng v. Smith,* 849 F.2d 80, 82 (2d Cir.1988); *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (*per curiam*). Where the injunction sought will grant substantially all of the relief ultimately requested, the Second Circuit has required the movant to show a "substantial likelihood of success on the merits, *i.e.,* that their cause is considerably more likely to succeed than fail...." *Abdul Wali,* 754 F.2d at 1026. In this context, the Second Circuit has stated:

> "By employing such a standard, we may content ourselves in the knowledge that injunctive relief will not be precipitously granted in cases were the grant may serve to provide all the relief that is sought on the merits." *Id.*

The concern that such preliminary relief not be precipitously granted is equally applicable in the instant case.

In consideration of the Government's interest in arresting the defendant property and Claimant's competing interest in the protection of his constitutional rights, the court finds that in order to obtain a warrant of arrest in rem the Government must demonstrate a likelihood of success on the merits of its complaint. The ultimate relief sought in the complaint is complete forfeiture of the

property to the Government. In the instant application the Government seeks to take control of the defendant property. While not providing the Government with all of the relief sought in the complaint, the warrant of arrest in rem is substantial relief. It provides the Government with significant control over the defendant property. Moreover, unlike other forms of property subject to forfeiture, *i.e.* automobiles, vessels and currency, the defendant property is not likely to be moved, and therefore the Government's need to take control is not as great. This is not to say that the Government has no interest in arresting the defendant property. The Supplemental Rules permit the Government to seek such relief, and the court recognizes the Government's interest in ensuring that the property is not used for illegal purposes. However, the Government's interest must be balanced against the Claimant's interest in the property as a personal residence.

■ Therefore, because the relief sought is substantial and will significantly affect the constitutional rights of Claimant, the court finds that the Government must demonstrate a likelihood of success on the merits. Application of this standard will provide claimants with a meaningful opportunity to be heard prior to the issuance of a warrant of arrest in rem. However, like a ruling on a motion for a preliminary injunction, the court's ruling on the instant application is tentative, pending a trial or motion for summary judgment, *see Goodheart Clothing Company v. Laura Goodman Enterprises, Inc.,* 962 F.2d 268, 274 (2d Cir.1992); and it will have no preclusive effect on the court's subsequent, more thorough consideration of the merits.

■ As stated above, to succeed on their complaint for forfeiture the Government must demonstrate probable cause to connect the defendant property to narcotics activity. "[T]he government must have reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture." *Livonia Road,* 889 F.2d at 1267 (citing *Banco Cafetero Panama,* 797

F.2d at 1160). The proof presented by the Government is clearly sufficient to show a likelihood of satisfying this burden. Fuller's affidavit, the affidavit from Investigator Fernandez, and the fruits of the January 14, 1992 search, considered together demonstrate that the Government is likely to succeed.

However, Claimant asserts that the fruits of the January 14, 1992 search were obtained in violation of the Fourth Amendment. It is clear that evidence derived from a search in violation of the Fourth Amendment is inadmissible in civil forfeiture proceedings. *See One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965). If the fruits of the January 14, 1992 search were obtained in violation of the Fourth Amendment and are therefore inadmissable in these proceedings, then the Government's likelihood of succeeding is significantly diminished.

Claimant is seeking to invoke the principle established in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to defeat the instant application.[5] He argues that a hearing is necessary to determine whether Investigator Fernandez knowingly and intentionally made false statements in the search warrant application. However, *Franks* only requires a hearing where the claimant makes a substantial preliminary showing that (1) in the search warrant application the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause. *United States v. Campino,* 890 F.2d 588, 592 (2d Cir.1989), *cert. denied,* 494 U.S. 1068, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990). In his papers submitted in opposition to the Government's application, Claimant disputes the truth of the statements made by Fuller and whether the electrical usage at the defendant property was excessive. However, he has produced nothing which suggests that Investigator Fernandez made any false statements in the search

5. Although the Second Circuit has recently declined to specifically decide the applicability of *Franks* to civil forfeiture proceedings, *see Black Ledge Drive,* 897 F.2d at 100, the Government

has not disputed its applicability. Therefore, the court will not decide the question, and will assume its applicability to these proceedings.

warrant application, and certainly nothing which suggests that any false statements were made either knowingly and intentionally, or with reckless disregard for the truth. Based upon the papers submitted, Claimant has not made the necessary preliminary showing required by *Franks*. Consequently, the Government's likelihood of the Government's success on the merits of the complaint are in no way diminished by Claimant's opposition.

### CONCLUSION

In sum, considering the substantial nature of the invasion of Claimant's rights occasioned by the issuance of a warrant of arrest in rem, the court finds that to obtain that preliminary relief the Government must demonstrate a likelihood of success on the merits of the underlying complaint. This standard accords Claimant a meaningful opportunity to be heard and will significantly minimizes the chance that such relief will be precipitously granted. Applying this standard to the instant case, the court finds that the Government has demonstrated a likelihood of success on the merits of the complaint. Therefore, the instant application for a warrant of arrest in rem for the defendant property is granted, and the Government is directed to submit an appropriate warrant for the court's signature.

**IT IS SO ORDERED.**